Newell G. SMITH, Appellant,

v.

The HOME INDEMNITY COMPANY, Appellee.

No. 2-84-074-CV.

Court of Appeals of Texas, Fort Worth.

Jan. 17, 1985.

Gene Gaines, Dallas, for appellant.

Strasburger & Price, and P. Michael Jung and Michael R. Buchanan, Dallas, for appellee.

Before HUGHES, JOE SPURLOCK, II and HILL, JJ.

## OPINION

JORDAN, Justice.

Newell G. Smith appeals from a summary judgment granted by the trial court in favor of The Home Indemnity Company in two separate worker's compensation cases, consolidated for trial. The insurance company had moved for summary judgment alleging that the claims were filed after six months from the alleged date of injury without good cause for late filing, and Smith had made a voluntary, knowing and intelligent election of remedies by making claims upon and receiving benefits from his employer's group health insurance. The trial court, without stating a reason, granted the motion and Smith appeals on two grounds of error.

We affirm.

The summary judgment proof consisted of: the pleadings, two depositions of appellant Smith, the deposition of the Custodian of Records for Lincoln National Life Insurance Company, the employer's group health insurance carrier, facts deemed admitted by order of the trial court, and certified copies of the Industrial Accident Board's files in these worker's compensation cases.

On June 3, 1980, while in the employ of Safeway Stores, Inc. (Safeway), Smith allegedly suffered an occupational injury to his left foot, and was off work from June 4 through September 7, 1980, and again from November 13, 1980 through November 8, 1981. He underwent surgery on his left foot on November 19, 1980. This alleged occupational injury was not reported to Safeway, the employer, within thirty days of the alleged date of injury, June 3, 1980. On July 9, 1980, approximately one month after the alleged injury, Smith filed a claim with Lincoln National Life Insurance Company, Safeway's group insurance carrier, stating in his application that his injury was not incurred in connection with his work. By requests for admissions which were not answered by Smith and which were deemed admitted by the trial court, Smith admitted that at the time he applied for the group insurance benefits, he understood that Safeway's group health and disability plan covered off-the-job injuries and that Safeway's worker's compensation plan covered on-the-job injuries. He also admitted this in his deposition. Appellant thereafter received the full medical and disability benefits available under Safeway's group coverage, including surgery on his left foot in November of 1980 paid for by Lincoln National Life.

On May 12, 1981, more than eleven months after his claimed injury, Smith filed a claim for Worker's Compensation with the Industrial Accident Board, claiming that his disability was work-related. He filed his notice of injury with his employer on July 21, 1981, and Safeway filed Employer's First Report of Injury on July 22, 1981. By the requests for admissions, which went totally unanswered and which were deemed admitted by the court, it was established that Smith failed to give notice of the alleged injury of June 3, 1980 within thirty days from that date, and that he failed to file his claim for compensation within six months from that date. Appellant continued to accept group insurance benefits, obtained because of his representation that the disability was not work-related, even after he filed his claim for worker's compensation.

Smith also alleged that he sustained an identical occupational injury to his right foot on November 20, 1981, right after he returned to work, but he again filed for and received group insurance benefits in connection with this second alleged occurrence. He also later filed a worker's compensation claim for the November 20, 1981 incident.

Before considering the points of error raised on this appeal, we deem it necessary to comment on the effect of appellant's unanswered requests for admissions, some sixteen admissions having been deemed by the court because of his failure to answer. Smith erroneously argues that his deposition testimony contradicts his deemed admissions, thereby creating a fact question. Such is just not the case. TEX.R.CIV.P. 169 specifically states in part that any matter admitted under this rule is conclusively established as to the party making the admission unless the court on motion permits withdrawal or amendment of the admission. Smith totally ignored the requests for admissions and they went unanswered, without a motion to extend time for answering, or any other limiting motion, right up through the trial of this case. Neither did he move the court to withdraw or amend the admissions after they had been deemed by the court. Admissions, once made or deemed by the court, may not be contradicted by any evidence, whether in the form of live testimony or summary judgment affidavits. *Henke Grain Co. v. Keenan*, 658 S.W.2d 343, 347 (Tex.App.—Corpus Christi 1983, no writ); *American Title Company v. Smith*, 445 S.W.2d 807, 809 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). Where a party fails to respond to a request for admissions, "he will be precluded from offering summary judgment proof contradictory to those admissions." *Henke*, 658 S.W.2d at 347.

Smith's second point of error is based on claimed error in the granting of the summary judgment on the theory of election of remedies. In this regard he says that the affidavit of the custodian of the records of the group carrier suggests that the group insurance and worker's compensation remedies were not in fact inconsistent, contending that the relationship of the two policies with each other was ambiguous and confusing. This theory is refuted by his admissions which establish not only that the group insurance remedy was limited to non-work-related disability, but that Smith knew this to be true. He next contends that under this summary judgment record there was medical uncertainty as to whether his foot problems were work connected or not, relying on a September 3, 1980 insurance claim form on which his podiatrist checked the box for work-related disability. The problem with this argument is that there is no evidence of any kind, deposition testimony or affidavit, that Smith ever saw this form or that he was ever told by the podiatrist or any other physician that his condition was work-related. *Smith never filed an affidavit in response to Home Indemnity Company's motion for summary judgment.* He did not rely on this September 3, 1980 claim form because he never saw it.

As previously stated, the summary judgment proof showed that Smith applied for group insurance benefits known by him to be available only for a non-work-related disability. He thereafter accepted such benefits, both before and after he filed the worker's compensation claims which formed the basis of this suit. The inconsistent positions taken by Smith in his application for and acceptance of group benefits, on the one hand, and in his present worker's compensation claims amounted to inconsistent remedies and formed the basis for the granting of the summary judgment.

A case with a similar fact situation is *Overstreet v. Home Indemnity Co.*, 669 S.W.2d 825 (Tex.App.—Dallas), *rev'd*, 678 S.W.2d 916 (Tex.1984). In that case the claimant first sought group insurance benefits, representing in writing that her disability was not work-related: then, later, following surgery, she decided the problem was work-related and filed her worker's compensation claim. *Overstreet*, 669 S.W.2d at 826. In *Overstreet* also there

were requests for admissions which were deemed admitted by the trial court. *Id.* at 827. The Court of Appeals held the facts in *Overstreet* sufficient to warrant summary judgment for the compensation carrier on the grounds of election of remedies as announced in *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848 (Tex.1980). *Overstreet*, 669 S.W.2d at 827–28. The Supreme Court, however, reversed and remanded the case to the Court of Appeals for consideration of other points of error. *Overstreet*, 678 S.W.2d at 916. This very brief, rather opaque per curiam opinion simply said that "a majority of this court is of the opinion that the admissions do not establish as a matter of law that Overstreet made an 'informed' election under the rule of *Bocanegra....*" *Overstreet*, 678 S.W.2d at 916.

The admissions deemed against Smith, some of which are later referred to, are somewhat different than the admissions in *Overstreet*. Additionally, in this case, there were two depositions of appellant which were made part of the summary judgment record. Moreover, there is testimony, particularly in Smith's first deposition, which supports the information contained in the admissions, and which clearly shows that he did make an informed election to first file his claim for group insurance.

■ *Bocanegra*, 605 S.W.2d at 848, was also a case where a worker filed claims for both group and worker's compensation insurance, except in *Bocanegra* the female claimant first filed her worker's compensation case, settled it, then filed her claim for group insurance benefits. *Id.* at 850. The Supreme Court, in a trenchant and persuasive opinion by Justice Jack Pope, held that where the insured lacked knowledge of whether the injury was occupational or non-occupational at the critical time, eventual settlement of the compensation claim was not an informed election that barred the insured's action on the group medical and hospital policy to recover the amount of her medical and hospital bills resulting from non-occupational disease. *Id.* at 852–

53. The court in *Bocanegra*, defined the elements of the election doctrine as follows:

> The election doctrine, therefore, may constitute a bar to relief when (1) one successfully exercises an *informed choice* (2) *between two or more remedies, rights, or states of facts* (3) *which are so inconsistent as to* (4) *constitute manifest injustice.*

*Id.* at 851. (Emphasis added.)

■ The admissions made by Smith in the case before us satisfy the requirements of election of inconsistent remedies enunciated in *Bocanegra*. By his admissions it was established that: (1) Smith filed a claim for group insurance benefits; (2) he received the full medical and disability benefits, including surgery, available under his employer's group insurance coverage; (3) he knew at the time he applied for the group insurance that those benefits were for non-work-related injuries; and (4) at the time he applied for group insurance benefits, Smith knew the employer's worker's compensation insurance was for job-related injuries. These admissions, which could not be contradicted, establish beyond a doubt that the remedies sought by Smith are inconsistent.

The entire undisputed summary judgment proof in this case also places it squarely within the confines of the doctrine of election of remedies as defined in *Bocanegra*. The court held the doctrine of election of remedies was not applicable to that claimant so as to bar her subsequent claim for group insurance benefits, because there was confusion, even among the doctors, as to the causation of her ruptured disc. *Id.* at 853–54. The claimant's actions were at all times consistent with the medical advice she was receiving. Her doctor told her initially that she might have hurt her back at work, and so she initially filed a worker's compensation claim. *Id.* at 853. Upon being told by the doctor who performed her later surgery that her problems were not work-related, she promptly switched to a group insurance claim. *Id.* It was held that under the facts of that case, Mrs. Bocanegra lacked the requisite knowledge

to bind her to an informed election. *Id.* at 854. There is a complete absence of such bewilderment or conflicting medical opinion in this case. Here, it is undisputed that at the time he applied for group insurance benefits on both feet, it was clear to Smith that his problem was unrelated to his work and that was the reason he applied for benefits under the group policy, which covered non-work-related disabilities. We do not have one or more doctors in this case telling Smith, as was true in *Bocanegra,* that his condition was work-related and was an on-the-job injury. Moreover, Smith did not switch back and forth between group and worker's compensation claim applications, following shifting medical opinions, as did Mrs. Bocanegra. Instead, he continued to file group insurance claims all along, and only filed his first worker's compensation claim when his group disability benefits were about to expire.

We fail to see how there could be a clearer case of election of remedies, or rights, or states of facts than exists in this case. If this summary judgment proof does not bar a later claim for worker's compensation after an earlier filing under a group insurance policy, on the theory of an election, then there can be no election of remedies, rights, or states of facts in this type of case. *See Bocanegra,* 605 S.W.2d at 851, 852. Under the proof in this record, including the admissions and the two Smith depositions, we hold that Smith made a successful, informed choice between two or more remedies, rights, or states of fact which was so inconsistent as to constitute manifest injustice. One cannot eat his cake and have it too. Appellant's second point of error is overruled.

■ By his first point of error, appellant attacks the granting of the summary judgment on the theory that there was a fact issue as to whether he had good cause for late filing of his claims for worker's compensation. With respect to the filing of the claim for worker's compensation for the second injury, the one on November 20, 1981 to the right foot, the record is incomplete, and the briefs, frankly, confusing, on

when this claim was filed, whether it was late or not, and whether good cause for late filing, if such there was, exists. We accordingly hold that the summary judgment proof will not support summary judgment as to lack of good cause for late filing of the right foot injury of November 20, 1981. However, this is immaterial in view of our holding that Smith made a voluntary and informed choice of remedies with respect to both claims, when he first applied for and accepted benefits from his employer's group insurance.

■ As to the first occurrence, alleged work-related injury to his left foot on June 3, 1980, it is clear from this record that that claim was not filed until May 12, 1981, eleven months after the alleged injury. That it was late cannot be denied. As to good cause, this summary judgment record is completely bare of any excuse or reason for the late filing. Smith filed no affidavit in response to the motion for summary judgment and offered no other evidence of any nature as to why he failed to file his worker's compensation claim for almost one year after the alleged injury of June 3, 1980.

■ Smith argues that his claim was timely filed because Safeway failed to file an Employer's First Report of Injury as required by Act of June 6, 1979, ch. 309, sec. 1, 1979 Tex.Gen.Laws 710, 710, *amended by* Act of June 19, 1983, ch. 483, sec. 1, 1983 Tex.Gen.Laws 2815, 2817–18 (presently TEX.REV.CIV.STAT.ANN. art. 8307, sec. 7 (Vernon Supp.1984)), thus tolling the time for Smith to file his claim by virtue of TEX.REV.CIV.STAT.ANN. art. 8307, sec. 7a (Vernon Supp.1984). Section 7a provides, in effect, that the limitations period of six months does not begin to run against the claim of the injured employee until the Employer's First Report of Injury has been furnished. *Id.* The time for filing a worker's claim is tolled under this section only where an Employer's First Report of Injury is required to be filed under the 1979 version of sec. 7. *Camarillo v. Highlands Underwriters Ins. Co.,* 625 S.W.2d 11, 12 (Tex.Civ.App.—Beaumont

1981, no writ); *Robicheaux v. Aetna Casualty & Surety Co.,* 562 S.W.2d 568, 570 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ); *Lowe v. Pacific Employers Indemnity Co.,* 559 S.W.2d 370, 372 (Tex.Civ. App.—Dallas 1977, writ ref'd n.r.e.). When no notice is given, no sec. 7 report is required. In this case, Smith admitted that Safeway was not notified of his alleged June 3, 1980 injury to the left foot until July 21, 1981. Safeway's First Report of Injury was thereafter filed on July 22, 1981.

We hold that it was shown as a matter of law that Smith's first worker's compensation claim was filed almost a year late, without any showing whatever of good cause. Summary judgment on that basis as to the injury to the left foot was proper. Appellant's first point of error is overruled only as to the left foot injury.

We affirm the judgment.